RENDERED: JANUARY 28, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1457-MR

MERCY AMBULANCE OF
EVANSVILLE, INC.
d/b/a LIFEGUARD EMERGENCY
MEDICAL SERVICES                                          APPELLANT


                    APPEAL FROM FRANKLIN CIRCUIT COURT
v.                  HONORABLE THOMAS D. WINGATE, JUDGE
                    ACTION NO. 20-CI-00303


COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES, OFFICE OF
INSPECTOR GENERAL, DIVISION
OF CERTIFICATE OF NEED;
EMERGENT CARE EMS, LLC; AND
ERIC FRIEDLANDER, SECRETARY,
CABINET FOR HEALTH AND
FAMILY SERVICES, IN HIS OFFICIAL
CAPACITY                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, MAZE, AND McNEILL, JUDGES.

MAZE, JUDGE: Appellant/Mercy Ambulance of Evansville, Inc. d/b/a Lifeguard Emergency Medical Services ("Lifeguard") appeals the Franklin Circuit Court's order reversing the decision of the Cabinet for Health and Family Services ("the Cabinet") denying Appellee/Emergent Care EMS, LLC's certificate of need ("CON") application. For the following reasons, we affirm.

## BACKGROUND

In 2019, Appellee/Emergent Care EMS, LLC ("Emergent") filed a CON application with the Cabinet seeking approval to establish ground ambulance services in Floyd County, Kentucky. Emergent noted that existing ambulance providers in Floyd County could not accommodate the demand level for ambulance services, as documented by slow response times. In response, Appellant/Lifeguard challenged Emergent's CON application and, as an "affected person" under KRS[1] 216B.015(3), submitted a request for a public hearing.

A public hearing took place on February 24 and 25, 2020. At the hearing, Emergent presented two witnesses: (1) Robert Osborne, Emergent's sole member;[2] and (2) Dan Sullivan, an expert in healthcare. In opposition, Lifeguard

---

[1] Kentucky Revised Statutes.

[2] At the time, Robert Osborne was Emergent's sole member. He passed away between the filing of the CON and the circuit court's October 16, 2020, order.

presented three witnesses:  (1) Aaron Paul Walther, a manager with American Medical Response; (2) E. Janie Ward, a director with Global Medical Response, the parent company of Lifeguard; and (3) Kathryn M.T. Platt, an expert in healthcare.

On March 18, 2020, the Cabinet issued its final order.  The Cabinet found that Mr. Osborne lived in Floyd County and had worked for Lifeguard's predecessor, Trans-Star Ambulance Service, since 2013.  In 2019, after Lifeguard took over Trans-Star's operations, Mr. Osborne resigned due to concerns over the long hours he had to work and complaints of long response times from patients' family members.  Mr. Osborne testified that he intended to purchase two ambulances and operate Emergent to serve the Floyd County area.

As to Lifeguard, the Cabinet found that it provided services to eight counties, including Floyd County, and held a license for twelve ambulances.  Ms. Ward testified that Lifeguard had taken recent steps to address staffing issues and response times in Floyd County.  However, the Cabinet noted that no Lifeguard employees testified at the hearing.

Ultimately, the Cabinet denied Emergent's CON application, concluding that Emergent failed to satisfy two of the five Review Criteria enumerated in KRS 216B.040(2)(a)(2), to wit:  Criterion One ("consistency with plans," which requires an applicant to notify all licensed agencies providing similar

services in the proposed geographic area pursuant to applicable administrative regulations[3] and the State Health Plan) and Criterion Four ("costs, economic feasibility, and resources availability"). Specifically, the Cabinet held that Emergent failed to satisfy Criterion One by not notifying two air ambulance services of its CON application. And, the Cabinet held that Emergent failed to satisfy Criterion Four because it could not meet its run projections.

Emergent then filed a petition for review/appeal in Franklin Circuit Court. On October 16, 2020, the circuit court reversed the Cabinet's decision, finding it arbitrary and not supported by substantial evidence. First, the circuit court held that Criterion One was met because Emergent notified the *ground* ambulances within the proposed area and, thus, complied with the State Health Plan. Second, the circuit court held that Criterion Four was met because an additional ambulance service was needed in the area, Emergent had adequate capital to run an ambulance service, and Emergent's operation would be economically feasible.

Lifeguard now appeals, arguing that the circuit court erred in reversing the Cabinet's final order instead of remanding the case for a new evidentiary hearing. Also, Lifeguard contends that the circuit court incorrectly

---

[3] *See generally* 900 Kentucky Administrative Regulations (KAR) 6:020 *ff.*

considered and relied upon information outside of the administrative record to arrive at its decision.

Additional facts will be developed as necessary.

## STANDARD OF REVIEW

When reviewing the circuit court's ruling on an agency's decision, an appellate court stands in the shoes of the circuit court and reviews the agency's decision for arbitrariness. *Martin County Home Health Care v. Cabinet for Health and Family Services*, 214 S.W.3d 324, 326 (Ky. App. 2007) (citations omitted). If the agency's findings of fact are supported by substantial evidence of probative value, "they must be accepted as binding and it must then be determined whether or not the agency has applied the correct rule of law to the facts[.]" *Liquor Outlet, LLC v. Alcoholic Beverage Control Bd.*, 141 S.W.3d 378, 381 (Ky. App. 2004) (citation omitted). The Court of Appeals reviews issues of law involving an administrative agency decision on a *de novo* basis. *Id.* "In particular, an interpretation of a statute is a question of law and a reviewing court is not bound by the agency's interpretation of that statute." *Id.*

## ANALYSIS

I. **The circuit court properly reversed the Cabinet's decision, which was arbitrary and not supported by substantial evidence.**

The CON application and review process is controlled by the Cabinet, the administrative agency vested with statutory authority to promulgate

administrative regulations concerning the CON process. KRS 216B.040(2)(a)1. Emergent's CON application was governed by five Review Criteria set forth in KRS 216B.040(2)(a)2 a.-e.,[4] the formal review criteria established by 900 KAR 6:070, and the CON review standards at Section V, Part A of the November 2018 Update to the 2017-19 State Health Plan ("SHP") in 900 KAR 5:020.

As stated, the administrative hearing officer for the Cabinet determined that Emergent's CON application did not meet Criterion One and Criterion Four. We will address Criterion One first.

## A. Criterion One

In its final order, the Cabinet found that Emergent failed to notify two air ambulance services, University Air Care and Med-Trans Corp. d/b/a UT Lifestar, of its CON application. The Cabinet concluded that the SHP did not exclude air ambulances from the notice requirement and Emergent incorrectly used *ground* miles instead of *aeronautical* miles to measure the "geographic service area," so Emergent's CON application was not consistent with Criterion One.

---

[4] Those statutory criteria are: (1) consistency with the State Health Plan; (2) need and accessibility; (3) interrelationships and linkages; (4) costs, economic feasibility, and resources availability; and (5) quality of services. A sixth criterion pertains to long-term care beds and is not relevant to this CON dispute.

The circuit court disagreed and reversed. Holding that substantial evidence in the record suggested that Emergent complied with Criterion One, the circuit court stated:

> To be consistent with the State Health Plan, [Emergent] was required to notify every licensed agency in Floyd County. Licensed agencies are kept in a directory by the [KBEMS[5]], which the Hearing Officer relied on in determining that [Emergent] did not provide notice to all licensed agencies in Floyd County. However, [Emergent] submitted an Open Records Request to KBEMS in order to determine the agencies to notify. [Emergent's] Open Records Request was not admitted by the Hearing Officer because [Emergent] did not pre-file that request, but Mr. Osborne testified to [Emergent's] Open Records Request and the response thereto. If [Emergent] requested that KBEMS, the keeper of the directory of licensed agencies, provide [Emergent] with a list of licensed agencies such that [Emergent] can notify those agencies and KBEMS provides the list and [Emergent] notifies those agencies, then the [c]ourt fails to see how [Emergent] did not comply with the State Health Plan.

Because Emergent notified the agencies KBEMS identified in response to Emergent's Open Records Request, the court held that Emergent complied with the SHP. Moreover, the circuit court noted that Emergent was applying to establish a *ground* ambulance service and using *ground* miles as a measurement was reasonable, especially since "miles" was not defined in the KBEMS directory.

---

[5] Kentucky Board of Emergency Medical Services.

For its appeal, Lifeguard argues that the circuit court failed to apply the plain language of the SHP. Lifeguard claims the SHP required Emergent to notify all ambulance services in the notice area, *including* air ambulances, and the circuit court failed to defer to the Cabinet's findings of fact that it was reasonable to use *aeronautical* miles instead of *ground* miles. Additionally, Lifeguard claims that Emergent's action of placing some air ambulances on notice of its CON application is a legal admission that such notification was required. Because Emergent failed to notify UT Lifestar and University Air Care of its CON application, Lifeguard contends that Emergent failed to comply with Criterion One.

Pursuant to Criterion One, "[e]ach proposal approved by the cabinet shall be consistent with the state health plan, and shall be subject to biennial budget authorizations and limitations, and with consideration given to the proposal's impact on health care costs in the Commonwealth." KRS 216B.040(2)(a)2.a. To be consistent with the SHP, 900 KAR 6:070 Section 2(1)(a) requires the CON application to be consistent with the SHP in 900 KAR 5:020. The CON review standards in 900 KAR 5:020 at Section V, Part A of the SHP states:

**A. Ambulance Service**

**Definition**
"Ground ambulance services" means services provided
by a Class I, II, III, or IV ground ambulance transport

agency. The license classifications are established in KRS 311A.030 and 202 KAR 7:545.

**Review Criteria**
An application for ground ambulance services shall be consistent with this Plan if the following criteria are met:

1. The applicant shall document that all agencies licensed to provide ambulance service or medical first response within the applicant's proposed geographic service area have been given notice of the applicant's intent to obtain a certificate of need. The notice shall describe the scope of service and proposed geographic service area with specificity; and . . . .

As Emergent points out, the SHP's "ambulance service" section heading above is followed by a definition for "ground ambulance services" and is defined by license classifications (Class I, II, III, and IV) that only apply to ground ambulance services. *See* KRS 311A.030(1)(a)-(d). Air ambulance providers are classified as Class VII and, thus, are not included within the SHP. *See* KRS 311A.030(1)(g). Therefore, we agree with the circuit court that, based on the plain language of the SHP, Emergent did not need to notify the two air ambulance services to be consistent with the SHP and meet Criterion One.

The foregoing conclusion is bolstered by the purpose for the notice requirement, which allows competitors, or "affected persons," to contest CON applications and request a hearing. *See* KRS 216B.010 and KRS 216B.085(1). "Affected persons" are defined as "health facilities located in the health service

-9-

area in which the project is proposed to be located which provide services similar to the services of the facility under review[.]" KRS 216B.015(3). As the circuit court noted, ground and air ambulance services are not exactly "similar" services as contemplated by KRS 216B.015(3) as one transports patients by automobile and the other transports patients by airplane or helicopter. Moreover, air ambulances are different from ground ambulances because air ambulances are not required to have a CON since they are governed by the Federal Aviation Administration (FAA) and the Airline Deregulation Act (ADA), which are federal laws that preempt state certificate of need laws. *See Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721 (E.D. N.C. 2008) (holding the ADA preempted North Carolina's certificate of need law, which conditioned the licensing of an air ambulance provider upon proof that existing air ambulance services in the state could not accommodate the projected need for the services).

This brings us to the Cabinet's determination that aeronautical miles as opposed to ground miles should have been used to measure the proposed geographical area. Emergent used Google Maps to provide notice to all licensed providers within one hundred *ground* miles, while Lifeguard used Google Maps to determine that, by *aeronautical* miles, Emergent failed to provide notice to the two air ambulances at issue. According to the KBEMS directory, University Air Care's service area is a "150 mile[] radius of Cincinnati, OH" and UT Lifestar's

service area is "KY Counties within a 100 mile[] [radius] of Knox County, TN." However, as noted by the circuit court, the KBEMS directory does not define "miles." Yet, the Cabinet interpreted "miles" to mean aeronautical instead of ground miles based on testimony from Lifeguard witness, Ms. Ward, who testified that air ambulance providers only use aeronautical miles to determine their service area. While Lifeguard urges this Court to defer to the Cabinet's adoption of aeronautical miles as opposed to ground miles to determine which agencies Emergent was required to notify, we agree with the circuit court that this was an arbitrary finding.

For Lifeguard's final point regarding Criterion One, it argues that Emergent's notification of some air ambulance services within the proposed geographic service area is a legal admission that it needed to provide notice to University Air Care and UT Lifestar. Lifeguard claims the circuit court erred by not acknowledging this. We disagree. Mr. Osborne testified that Emergent notified some air ambulances, so nothing would be "left out." This testimony was not a judicial admission that air ambulances were required to be notified. *See Goldsmith v. Allied Bldg. Components, Inc.*, 833 S.W.2d 378, 380 (Ky. 1992) (holding that judicial admissions may be disproved by other evidence and "should be sparingly administered.") (citing *Sutherland v. Davis*, 151 S.W.2d 1021 (Ky. 1941)).

Again, the evidence showed that Emergent notified the licensed agencies identified by KBEMS in response to its Open Records Request. If Emergent asked KBEMS to determine which agencies it must notify and KBEMS provided a list of those agencies to Emergent, which prompted Emergent to notify those agencies, we agree with the circuit court that Emergent's proposal was consistent with the SHP and met Criterion One.

## B. Criterion Four

Next, we address Criterion Four and Lifeguard's argument that Emergent's proposal is not economically feasible for ongoing operations. Criterion Four provides:

> *Costs, economic feasibility, and resources availability.*
>
> The proposal, when measured against the cost of alternatives for meeting needs, shall be judged to be an effective and economical use of resources, not only of capital investment, but also ongoing requirements for health manpower and operational financing[.]

KRS 216B.040(2)(a)2.d. Under Criterion Four, the Cabinet must determine whether the proposal "is economically feasible for the applicant to implement and operate the proposal" and "if the cost of alternative ways of meeting the need . . . would be a more effective and economical use of resources." 900 KAR 6:070, Section 2(5)(a-b).

In the underlying hearing, the Cabinet found that Emergent's financial condition and ability to commit the capital expenditure was not in dispute. Also, the Cabinet found that Emergent's proposal was a sound use of economic resources. Further, the Cabinet found that Lifeguard did not provide evidence that one of its stations was regularly staffed or had the capacity to perform additional emergency runs in Floyd County to improve 911 response times. However, the Cabinet found that Emergent's proposal did not meet Criterion Four because its run projections were not supported by a preponderance of evidence since Lifeguard had twelve ambulances and Emergent only proposed having two.

In reversing, the circuit court held that the Cabinet's findings did not "square" with its conclusions. If Emergent would make a profit on its runs, had adequate capital, and another ambulance service was needed in Floyd County, which the Cabinet all found, then the circuit court concluded that Emergent's proposal met Criterion Four. The circuit court further noted that the need for more ambulances is magnified due to the pandemic and the need for quicker response times.

On appeal, Lifeguard argues the circuit court "cherry picked" portions of the record relating to Emergent's profit margin and initial capital while ignoring the fact that Emergent could not demonstrate ongoing viability. Also, Lifeguard claims the circuit court erroneously mixed Criterion Two (need and accessibility)

-13-

with Criterion Four (costs, economic feasibility, and availability of resources), which are supposed to be independent of each other.

We agree with the circuit court that the Cabinet's conclusion regarding Criterion Four is arbitrary and not supported by substantial evidence. The Cabinet found that Emergent would make a profit on each run and that Lifeguard lacked the capacity for additional runs. The record also contains substantial evidence that there was a surplus of runs needed to be performed in Floyd County in a timely fashion. So, the Cabinet's conclusion that Emergent would not meet Criterion Four is not supported by its own findings.

## II. The circuit court did not err by considering information outside the administrative record.

In its petition/appeal to the circuit court, Emergent attached the Governor's emergency order shutting down businesses to stop the spread of COVID-19, articles regarding COVID-19 cases and deaths in Kentucky, and a March 19, 2020, notice stating that the Cabinet had ceased hearings on CON applications. In response, Lifeguard moved to strike the exhibits and references to the pandemic. In a May 6, 2020, order, the circuit court held that, while it agreed with Lifeguard's argument that the exhibits were irrelevant because Emergent already satisfied the "need" criterion, the court would not strike the exhibits and would instead treat them "as avowal." The circuit court stated that it would not rely on these arguments or exhibits in reaching its decision on the petition/appeal.

-14-

However, Lifeguard complains that the circuit court did rely on these arguments and exhibits in reaching its decision. For support, Lifeguard points to the following language from the circuit court's order reversing the Cabinet:

> Further concerning to the [c]ourt is that Lifeguard has monopolized ground ambulance services in Floyd County amid a pandemic. As noted above, there is a demonstrative need for quicker response times and additional ground ambulance runs in Floyd County, a need that is magnified during the COVID-19 pandemic.

October 16, 2020, order, p. 10.

While the circuit court acknowledged the COVID-19 pandemic in its order, we see no error. The administrative record was created before the COVID-19 pandemic began. The circuit court's recognition of a pandemic that was occurring at the time of its decision does not mean that the circuit court relied on the pandemic to reverse the Cabinet's decision.

## III.   The circuit court did not err in denying Lifeguard's motion to abate.

At the time it filed its CON application, Mr. Osborne was the sole member of Emergent, a limited liability company ("LLC"). While this case was on petition/appeal to the circuit court, Mr. Osborne sadly died. Emergent attached the affidavit of Mr. Osborne's mother, Sabrina Lafferty,[6] to its circuit court appellate

---

[6] Sadly, Ms. Lafferty passed away during the pendency of this appeal. Emergent made the Court aware of Ms. Lafferty's death in its motion for enlargement of time, which included the affidavit of Ms. Lafferty's mother, Ada "Marie" Lafferty, who attested that she intends to continue the LLC's business.

-15-

brief to inform the court of Emergent's status at the time. Ms. Lafferty attested that Mr. Osborne had no spouse or children and that she and Mr. Osborne's father were the only heirs. She further attested that she had been appointed the administratrix of Mr. Osborne's estate in Floyd County Probate Court, Case No. 20-P-00147, and would inherit his interest in Emergent. Finally, Ms. Lafferty attested that she had worked for Lafferty Enterprises, Inc. d/b/a Trans-Star Ambulance Service for twenty years and, "as a legacy" to her son, she intended to implement his proposal to establish a ground ambulance service "to serve the need for another ambulance service in Floyd County."

In response, Lifeguard filed a motion to abate the matter, arguing that the case died with Mr. Osborne and the matter had not been properly revived in Ms. Lafferty's name. Lifeguard further claimed that Emergent failed to attach any "court documents" to substantiate Ms. Lafferty's affidavit.

In a July 8, 2020, order, the circuit court denied Lifeguard's motion to abate. The circuit court held the matter could continue because Ms. Lafferty provided an affidavit within ninety days of Mr. Osborne's death, pursuant to KRS 275.285(4)(b), stating her intention to continue the LLC and pursue the ambulance service.

For its appeal, Lifeguard argues the circuit court mistakenly accepted Ms. Lafferty's "summary affidavit" that she is the sole successor-in-interest with

the authority to continue Emergent and the affidavit was insufficient to maintain Emergent's existence under KRS 275.285(4)(b).  Thus, Lifeguard claims the circuit court erred in failing to abate the matter.

We disagree.  Under KRS 275.285(4)(b), when an LLC has no remaining members, it "shall be dissolved" "*except* that the [LLC] shall *not* be dissolved and its affairs shall *not* be wound up when" the successor-in-interest of the last remaining member "agrees in writing to continue" the LLC.  (Emphasis added.)  Here, Emergent presented the affidavit of Ms. Lafferty stating an intention to continue the LLC's business, in conformance with KRS 275.285(4)(b).  While Lifeguard argues that Emergent had to prove how Mr. Osborne's estate would be distributed in probate, it cites no legal authority for such a requirement.  Moreover, the action was being litigated in the name of the LLC, not Mr. Osborne.  No substitution of parties was required, pursuant to CR[7] 25.01, because the LLC remained an ongoing entity.  Thus, the circuit court did not err in denying Lifeguard's motion to abate.

## IV.     No palpable error occurred by not remanding the case for a new evidentiary hearing.

Finally, Lifeguard argues that all the evidence in the record below is no longer accurate due to Mr. Osborne's death.  Specifically, Lifeguard claims that

---

[7] Kentucky Rules of Civil Procedure.

Mr. Osborne testified he would be responsible for Emergent's proposed ambulance service and would personally fund the start-up cost. Because Mr. Osborne died, Lifeguard claims the record no longer demonstrates Emergent's ability to implement an ambulance service and the circuit court committed reversible error by not remanding the case back to the Cabinet for a new evidentiary hearing.

In response, Emergent argues that this issue was not preserved and is improper to consider on appeal. Emergent also claims that Lifeguard's argument concerns Criterion Five, which is the ability to provide quality service, and this issue was not raised in the circuit court. While Lifeguard filed a motion to abate due to Mr. Osborne's death, it never moved to add a counterclaim to allege that Criterion Five could no longer be met.

Although Lifeguard claims the issue of whether this matter should have been remanded back to the Cabinet for a new evidentiary hearing was raised in its motion to abate and its prehearing statement to this Court, its brief does not state where this exact issue was preserved. And, neither the circuit court's order reversing the Cabinet's final order nor the circuit court's order denying Lifeguard's motion to abate addresses this issue.

Pursuant to CR 76.12(4)(c)(iv), an appellate brief must contain at the beginning of each argument a reference to the record showing whether the issue was preserved for review and in what manner, which emphasizes the importance of

-18-

the firmly established rule that the trial court should first be given the opportunity to rule on questions before they are available for appellate review. It is only to avert a manifest injustice that this court will entertain an argument not presented to the trial court. *Elwell v. Stone*, 799 S.W.2d 46, 48 (Ky. App. 1990). RCr[8] 10.26 provides:

> A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief may be granted upon a determination that *manifest injustice* has resulted from the error.

(Emphasis added.)

Although Mr. Osborne's death, as well as Ms. Lafferty's subsequent death, has undoubtedly changed the members of Emergent as an LLC, we do not conclude that the circuit court committed a palpable error in not remanding the matter back to the Cabinet for a new evidentiary hearing. As stated, Emergent remains an ongoing entity and continues, as an LLC, pursuant to KRS 275.285(4)(b). The CON belongs to the LLC applicant, Emergent, and not an individual.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's order.

---

[8] Kentucky Rules of Criminal Procedure.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Holly Turner Curry
Frankfort, Kentucky

BRIEF FOR APPELLEE
EMERGENT CARE EMS, LLC:

Mark W. Leach
Kevin C. Burke
Jamie K. Neal
Louisville, Kentucky